816 So.2d 210 (2002)
Esig PERLOW, Appellant,
v.
Sharon H. BERG-PERLOW; Michel Berg, individually and as Trustee; Louis Berg and Minnette Berg, individually, jointly and severally, Appellees.
Nos. 4D00-60, 4D00-978.
District Court of Appeal of Florida, Fourth District.
May 8, 2002.
*211 Edna L. Caruso of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellant.
Joel M. Weissman of Joel M. Weissman, P.A., and Doreen M. Yaffa, P.A., West Palm Beach, for Appellee-Sharon H. Berg-Perlow.

*212 ON MOTION FOR REHEARING

PER CURIAM.
We deny the appellant's motion for rehearing. We withdraw the opinion issued on December 12, 2001, and substitute the following opinion.
Esig Perlow, former husband, appeals from a non-final order that denied his motion for temporary attorney's fees in the dissolution of his marriage to appellee Sharon Berg-Perlow. This court relinquished jurisdiction to the trial court to permit the trial to proceed and for the entry of a final judgment in the dissolution proceeding. Appellant's appeal from that judgment has been consolidated with the non-final appeal.
The parties were married in 1986, and their only child was born in 1991. The parties resided at one time in California, where appellant was an attorney. In 1998, appellee commenced divorce proceedings. Appellant's first lawyer filed a financial affidavit on his behalf, showing income for 1996 to be $177,000. The affidavit says that for 1997, the year preceding the petition, appellant's income was, upon information and belief, only slightly less.
Initially, appellee sought primary residential custody of the parties' child, with shared parental responsibility and liberal visitation to appellant. However, the child's behavior deteriorated markedly during the dissolution. He became verbally abusive and physically violent, both with appellee and at school. Appellee, on several occasions, sought and received increasingly restrictive contact between the child and appellant. The record contains evidence that appellant actively and repeatedly undermined the child's psychological treatment, including making threats to the child's psychologist.
Before the final hearing, appellant was represented by three different attorneys. The last attorney filed a motion for temporary fees and costs on appellant's behalf, but sought and received the court's permission to withdraw from representation before the motion was heard. Appellant proceeded, pro se, thereafter. On December 19, 1999, more than two months before the final hearing, the trial court conducted a hearing on appellant's motion for temporary attorney's fees. His third attorney, who had withdrawn from representation, appeared and testified at that hearing as to the amount of attorney's fees that he estimated would be required to represent appellant in the dissolution proceeding. Appellant gave sworn testimony that he did not have the money to pay a lawyer. He also testified that $123,000 of the $177,000 income that he had shown on his financial affidavit for the year 1996 was in dispute. He claimed that he had filed an amended financial affidavit, but the trial court could not find the amended affidavit in the court file and appellee's counsel denied receiving a copy of it. Appellant also testified that he had no income during 1997, 1998, 1999, that he had a heart condition, and that he went through bankruptcy. However, appellant failed to present an attorney to testify that he or she would be willing to represent him and as to the amount of attorney's fees that would be needed to represent him.
The trial court found that appellant failed to show an obligation to pay attorney's fees, or to show that the absence of an anticipatory award prevented him from obtaining counsel, and, therefore, he had failed to show need. The trial court also explained that it did not have sufficient evidence to determine the amount of an award because there was no evidence as to the hourly rate that would be charged by the attorney who would represent the husband. The trial court provided in its order that "the husband's request for temporary attorney's fees is denied. This is without *213 prejudice to the husband to seek temporary attorney's fees after retaining counsel should he do so."
On February 22, 2000, the case proceeded to trial. On the opening day of trial, appellant made a motion for continuance, which the trial court denied. He then absented himself from the proceedings without leave of court, and appellee began presentation of her case in his absence. After the lunch recess, appellant re-appeared and made a motion for temporary attorney's fees. Although he made argument to the court, he presented no evidence and the court denied his motion for attorney's fees. The trial court explained:
THE COURT: The only way I know of basically doing attorney's fees is you have to get someone to come in here, an attorney to come in and say they have agreed to take the case on the basis and we have a hearing. There is no procedure whereby I order them to give you money to run out and hire an attorney.
MR. PERLOW: Well, Your Honor, I wasn't proposing they give me the money. I was proposing a certain amount be allocated
THE COURT: I can't allocate unless an attorney comes in and says I am going to charge $200 an hour and I need this much for this and that and this and that, and that you don't have the ability to pay and you have the need and then we proceed from there.
The court informed appellant that if he "came in tomorrow with an attorney," it would hear his motion for attorney's fees. The next day, appellant appeared with an attorney. The trial court recessed the trial proceedings and informed the attorney that
I want just to basically indicate the court's position here, that is that Mr. Perlow has indicated that he does not have sufficient funds to retain an attorney to represent him in this proceeding and I told him that he would have to get an attorney to come on board to say they would be willing to handle the case for him. We have already begun the trial and he has absented himself. He has been in and out, actually. I indicated to him that a cursory observation of the financial affidavits that it appeared somewhat likely that I am going to reserve jurisdiction for fees, that he might be entitled to fees and costs when the case was over with. That's essentially all I can tell you at this point. It's a question of whether you want to come on board with thatwith knowing that or not. I can't delay the trial or continue it at this point.
After being informed that the attorney had only had approximately two hours to discuss the case with appellant, the trial court offered to recess the case until the next day to permit the attorney to make a decision as to whether she intended to enter the case. The attorney responded that
If this is an instance where the only funding of the litigation is going to occur after the entry of a final judgment on a reservation of fees, after a finding of entitlement, after a finding of need on the part of the husband, a finding of ability to pay on the part of the wife, subject to appellate review, with the potential for a motion to stay; that even if the Court were to make all those findings in favor of Mr. Perlow, that is not a case that I would undertake, nor do I know of any other practitioner in Palm Beach County who would come on board under those circumstances, when it has been represented to me that this is a case of not less than 15 days trial duration. *214 Neither appellant nor the attorney presented sworn testimony at this proceeding. The attorney did not testify, nor did she seek to make a proffer as to the amount of her expected fee, her hourly rate, or the amount of time that she estimated would be required for the representation. The trial court denied appellant's motion and informed him that it would conduct a hearing at the end of the trial on the issue of entitlement.
The trial of the case proceeded and at the conclusion of the evidence, appellant asked the trial court to recess the proceedings and hear closing arguments the next day. Appellant also asked whether he needed to prepare a proposed final judgment. The trial court responded that:
I sort of didn't expect you to have one. So what we do have on staff is legal aids that are assigned to the family division and they would havebasically if I decide in your favor, then I will be working with them to come up with a final judgment.
But, if you have one to present, by all means present it.
The next day, at the conclusion of closing arguments, the following colloquy occurred:
THE COURT: Thank you.
Did you have a proposed judgment you want to give me?
[APPELLANT]: I do not. May I submit it today, later on?
THE COURT: That's okay. There are attorneys that will help me with it if I need them.
There will be a decision ready, copies can be picked up from Judge Colton's judicial assistant, any time after 3:00 o'clock this afternoon.
The final judgment which the judge signed was that proposed and submitted by appellee's counsel. It is twenty-five pages long, with six additional pages of financial exhibits incorporated by reference. After making numerous findings of fact, the judgment awards appellee sole parental responsibility for the child, finding that it would cause great detriment to the child to do otherwise. It orders appellant to have absolutely no contact with the child until he reaches the age of fourteen, but permits appellant thereafter to "petition the Court to allow contact upon a showing of a substantial change of circumstances in the best interest of the child." The judgment further makes reference to a prior order determining that appellant shall pay reasonable fees and costs for the vexatiousness of the litigation as it pertains to the discovery process, and provides that the amount of the fees shall be determined in a later evidentiary hearing.
Appellant raises numerous points in these consolidated appeals. We conclude that he has failed to demonstrate reversible error or an abuse of discretion. However, we will briefly discuss each of his arguments.
Appellant first contends the trial court erred as a matter of law when it denied his pre-trial motion for temporary attorney's fees because its ruling was based solely on the fact that appellant was not at the time represented by counsel. We disagree. The trial court's order also found that appellant failed to show an obligation to pay attorney's fees, and that appellant failed to prove that the absence of an anticipatory award prevented him from obtaining counsel. These findings are supported by the record. The trial court did not abuse its discretion in requiring appellant to present an attorney to testify as to the attorney's willingness to represent him and as to the elements necessary to determine the amount of the temporary fees. We also conclude that the trial court did not abuse its discretion *215 when it did not conduct separate hearings to first determine entitlement and then to determine the amount of temporary fees.
Appellant next contends that the trial court erred in failing to hold a hearing during the trial to determine his entitlement to fees, even if this required a continuance. The morning that trial commenced, appellant did not request a hearing on entitlement to attorney's fees. He simply requested a continuance. The decision on a motion for continuance is a matter within the trial court's discretion. Woods v. State, 490 So.2d 24 (Fla.1986). Although appellant's efforts to secure counsel were discussed during the hearing on the motion for continuance, the record reflects that appellant had been aware for at least two months of the nature of the evidence he needed to establish his entitlement to fees, and had been aware for more than four months of the date set for trial. He did not furnish a reasonable explanation for his failure to secure counsel, or evidence of his need for fees. The trial court did not abuse its discretion in denying the motion for continuance.
The next day, when appellant appeared with an attorney, the trial court recessed the trial and heard the attorney and appellant's argument on temporary attorney's fees. Neither appellant nor the attorney was sworn. The attorney rejected the trial court's offer to recess the proceedings until the following day to allow her additional time to confer with appellant. She advised the court that for her to enter the case, she would need a continuance of the trial and payment of her fee in advance. She did not testify nor make a proffer as to her hourly rate, the amount of time she would need to prepare and complete the case, or as to the amount of fees that would be required to represent appellant in these proceedings. Additionally, appellant did not testify, nor did he request an opportunity to proffer evidence of his inability to pay. For the reasons which we have discussed, the trial court did not abuse its discretion in not granting a continuance of the trial, nor in denying appellant's motion for attorney's fees. See Rosen v. Rosen, 696 So.2d 697 (Fla.1997); Zucker v. Zucker, 774 So.2d 890 (Fla. 4th DCA 2001).
In his next point on appeal, appellant contends that the trial court erred in allowing expert testimony regarding Parental Alienation Syndrome, because the testimony did not meet the standards of Frye v. United States, 293 F. 1013 (D.C.Cir.1923), and Brim v. State, 695 So.2d 268 (Fla.1997). Appellant failed to make this argument before the expert testified, therefore the point is waived for review. McDonald v. State, 743 So.2d 501 (Fla.1999).
Appellant also argues that the trial court erred in permitting his FBI record into evidence, and in allowing appellee's expert witnesses to testify as to his credibility. In these instances, appellant makes his arguments for the first time on appeal. He has, thus, failed to preserve the matters for review. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638 (Fla.1999); Dober v. Worrell, 401 So.2d 1322 (Fla.1981).
Appellant claims that the trial court improperly terminated his parental rights, yet required him to pay child support. The final judgment does not terminate appellant's parental rights. Instead, it suspends them until the child reaches the age of fourteen. The trial judge did not abuse his discretion by requiring the husband to continue to pay child support even though his right to visitation has been suspended. See Hunter v. Hunter, 540 So.2d 235 (Fla. 3d DCA 1989).
*216 Appellant's next argument, that the trial court granted relief for which appellee never pled, is also without merit. In her amended petition, appellee alleges that she is a fit and proper person to have sole physical custody of the child, that this would be in the child's best interest, that shared parental responsibility is not appropriate, and that appellant's visitation should be restricted. We hold that the allegations of the amended petition are sufficient to encompass the relief the trial court awarded.
Appellant also argues that if it is reversible error not to appoint a guardian ad litem before changing a child's name, it must be reversible error not to appoint a guardian ad litem before severing all ties between a child and his father, citing Cothron v. Hadley, 769 So.2d 1148 (Fla. 5th DCA 2000). In Cothron, the district court reversed not for failure to appoint a guardian ad litem, but for insufficient evidence. It remanded with instructions to appoint a guardian ad litem and to hold a further evidentiary hearing at which the guardian would be permitted to testify as to the best interests of the children. However, the district court did not hold that the appointment of a guardian is necessary in such a proceeding, nor did it indicate that had sufficient evidence been presented to the trial court, it would have reversed for failure to appoint a guardian. Although appellant characterizes the court's judgment as a termination of his parental rights, as we have stated above, the trial court did not terminate appellant's parental rights. This was not a proceeding pursuant to chapter 39, Florida Statutes. Therefore, failure to appoint a guardian ad litem was not error as a matter of law.
We also conclude that the trial court did not abuse its discretion when it denied appellant's motion for appointment of a guardian ad litem. Appellant did not move for the appointment of a guardian ad litem until more than two years after the commencement of the proceedings and until midway through the trial. Furthermore, he failed to furnish the trial court with sufficient reasons for the appointment of a guardian ad litem at this late stage of the proceedings. However, we direct the trial court's attention to section 61.401, Florida Statutes (2001), should any subsequent proceedings occur pertaining to the custody and visitation rights of the parties with the minor child.
Appellant also contends that the findings of the final judgment are unsupported by the evidence, complaining of ten specific findings. We disagree. The record contains sufficient evidence to support these findings.
Appellant claims to have been prejudiced because he could not afford a forensic accountant to demonstrate appellee's true assets and income. However, appellant failed to establish his financial need by competent evidence in either of his hearings on attorney's fees and costs.
Appellant also challenges the trial court's order awarding appellee attorney's fees pursuant to section 57.105, Florida Statutes. We do not reach this point because the trial court has not held a hearing to determine the amount of fees to be awarded. Therefore, the matter is not yet ripe for review.
Finally, we conclude that the trial court did not improperly delegate its decision making authority to counsel for appellee. Appellant argued in his main brief, and on rehearing, that because the trial judge made no oral findings and adopted appellee's proposed twenty-five page final judgment verbatim and signed it within two hours after closing argument, that the judgment must be reversed. On rehearing, appellant directs this court's attention *217 to Rykiel v. Rykiel, 795 So.2d 90 (Fla. 5th DCA 2000), and suggests that if this court affirms the final judgment, that it should certify conflict with the Fifth District Court of Appeal. We disagree. In Rykiel, the court stated
Although a trial court may request, as it did in this case, that counsel for both parties submit a proposed final judgment, the court may not adopt the judgment verbatim, blindly, or without making in-court findings. Review of the findings and conclusions of such a judgment is hampered or made impossible by the trial court's lack of participation. In this case, the record contains no findings or conclusions by the trial court, and the final judgment has no corrections, additions or deletions on its face. Under these circumstances, meaningful review by this court is impossible.
Id. at 92 (citations omitted).
Shortly after Rykiel issued, the Fifth District Court of Appeal in Douglas v. Douglas, 795 So.2d 99 (Fla. 5th DCA 2001), in a footnote, explained its Rykiel holding:
In Rykiel v. Rykiel, 795 So.2d 90 (Fla. 5th DCA 2000), we reversed a final judgment of dissolution, in part, because the trial court adopted verbatim a final judgment prepared by one party. That case is distinguishable from the facts of this case because in Rykiel there were numerous indicia of the judge's lack of participation and knowledge in the final judgment. We note, however, that the better practice is for the trial court to make fact findings and indications of its review of the judgment or order on its face.
Id. at 100 n. 1. Following Douglas in Thomas v. Thomas, 781 So.2d 540 (Fla. 5th DCA 2001), the district court rejected appellant's argument that Rykiel stood for the rule that a proposed final judgment adopted verbatim by a trial court constitutes reversible error. The district court said in Thomas
In Douglas v. Douglas ... we distinguished the situation in Rykiel where there was numerous indicia of the trial judge's lack of participation and knowledge in the final judgment from a situation where a trial judge has current knowledge of the trial proceedings and simply requests proposed judgments from the parties' attorneys in order to expedite finalization of a matter.
* * *
We have scrutinized each of Mr. Thomas' detailed objection to the court's findings and conclusions that he alleges are unnecessary, irrelevant, unfair or prejudicial to determine whether each is supported by competent substantial evidence the standard of review required upon appeal. We have found competent, substantial evidence to support the findings of the trial court and affirm both judgments.
Id. at 540-41 (citations omitted).
We conclude, as the court did in Thomas, that even though the trial judge made no changes, additions, or deletions to the final judgment, and signed the final judgment within two hours after its submission, that the final judgment should be affirmed. Here, the record shows the trial court had current knowledge of the trial proceedings and actively participated in the proceedings. The record contains evidence supporting the trial court's material findings of fact and the dispositions made in the final judgment. Therefore, we hold that the trial court's adoption of appellee's proposed final judgment did not constitute error or an abuse of discretion and we affirm the final judgment in all respects.
AFFIRMED.
*218 TAYLOR, J., OWEN, WILLIAM C., Jr. and DELL, JOHN W., Senior Judges, concur.